IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MALICIA CONLEY, DALE CONLEY, and )
   SHEILA DAVISON, Executors of the )
   Estate of JAMES KERR, deceased, )
   on behalf of the Estate of )
   JACQUELINE KERR, deceased, )
                           )
          Plaintiffs, )
                           )
     v. )   Civil Action No. 10-1455
                           )
ETHEX CORPORATION and K-V )
   PHARMACEUTICAL COMPANY, )
                           )
          Defendants. )

## MEMORANDUM OPINION

Pending before the Court is a motion by Defendants Ethex
Corporation ("Ethex") and K-V Pharmaceutical Company ("K-V"),
seeking summary judgment pursuant to Federal Rule of Civil
Procedure 56. (Doc. No. 18.) For the reasons that follow,
Defendants' motion is granted and summary judgment is entered in
their favor.

## I.   INTRODUCTION

### A.  Factual History[1]

According to the Complaint, K-V manufactures morphine
sulfate extended release tablets ("morphine tablets"); Ethex, a

---

[1] The facts in this section are taken from the Complaint and construed
in favor of Plaintiffs. Additional facts appear in Section III.A
below.

wholly-owned subsidiary of K-V, markets and sells the morphine tablets throughout the United States. In November 2008, Jacqueline Kerr, a resident of Earlyville, Virginia, was prescribed 15 milligram morphine tablets manufactured and distributed by Defendants. After taking the tablets for about a week, Mrs. Kerr informed her physician, Dr. Robert Pritchard, that the prescribed dosage did not relieve her pain. Dr. Pritchard instructed her to increase her dose from one 15 mg tablet twice a day to two 15 mg tablets twice a day. On the evening of November 9 and the morning of November 10, 2008, Mrs. Kerr followed these instructions.

Later on the evening of November 10, Mrs. Kerr was admitted to the intensive care unit at Martha Jefferson Hospital in Charlottesville, Virginia, with acute respiratory failure. Throughout twelve days in the hospital, she experienced low blood pressure, diarrhea, and difficulty breathing, all of which were attributed to an overdose of extended release morphine sulfate. Mrs. Kerr was subsequently released from the hospital but continued with intravenous chemotherapy.

While Mrs. Kerr was hospitalized, Ethex recalled certain lots of the morphine tablets, including those from which her prescription was filled, because the tablets were oversized and

2

contained as much as twice the stated amount of morphine sulfate.

After several months, Mrs. Kerr was deemed too weak to continue chemotherapy due to respiratory failure and morphine overdose. She died intestate on May 27, 2009. James Kerr, her husband, died on September 5, 2010.

## B. Procedural History

Acting as the executors of James Kerr's estate, Plaintiffs filed suit in this Court on November 2, 2010, stating six claims against Defendants: strict products liability, breach of implied warranty, breach of express warranties, negligence, negligent misrepresentation, and breach of the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 ("the VCPA.") In each claim, Plaintiffs alleged that Mrs. Kerr sustained severe physical injuries, including death, severe emotional distress, economic losses, and consequential damages as the result of the Defendants' actions; Mr. Kerr likewise suffered severe physical injuries, including death, severe emotional distress, and loss of consortium due to the death of his wife. Plaintiffs sought compensatory, punitive and exemplary damages, as well as attorneys' fees and treble damages under the VCPA. (See Doc. No. 12 at 2.)

Defendants filed their answers to the Complaint and, after

3

an initial case management conference with the Court, the parties engaged in a brief period of discovery in preparation for mediation which was scheduled for early July 2011.

On June 21, 2011, Defendants moved to dismiss the Complaint under Fed.R.Civ.P. 12(b)(6), arguing that none of the Plaintiffs had standing under Virginia law to pursue this matter. (Doc. No. 18.) Defendants provided several documents in support of their motion which the Court concluded were not appropriately considered without converting the motion to one for summary judgment. An order was entered to that effect on October 25, 2011 (Doc. No. 22), and the parties were given an opportunity to provide additional evidence and to amend their briefs. Both Plaintiffs and Defendants having responded to the Order of October 25, 2011, the matter is now ripe for disposition.

## C. Jurisdiction and Venue

As noted above, Jacqueline and James Kerr were at all times residents of the Commonwealth of Virginia. Plaintiffs Malicia and Dale Conley (collectively, "the Conleys") are also Virginia residents, and Plaintiff Sheila Davison is a resident of Pennsylvania. According to its answer to the Complaint, Ethex is a corporation organized under the laws of the State of Missouri with its principal place of business in that state, and K-V is a corporation organized under the laws of the State of

4

Delaware, also with its principal place of business in Missouri. This Court therefore has jurisdiction based on complete diversity of the parties and, according to the Complaint, an amount in controversy in excess of the statutory minimum. *See* 28 U.S.C. § 1332(a)-(c).

According to Plaintiffs, venue is appropriate in this Court under 28 U.S.C. § 1391(a)(1) and (c) because Defendants maintain continuous and substantial contacts with the forum state, thus subjecting them to personal jurisdiction in this District; Defendants do not dispute this assertion.

## II.  **STANDARD OF REVIEW**

A court may grant summary judgment if the party so moving can show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); Sollon v. Ohio Cas. Ins. Co., 396 F. Supp.2d 560, 568 (W.D. Pa. 2005). If a reasonable jury could return a verdict for the non-movant, the dispute is genuine and if, under substantive law, the dispute would affect the outcome of the suit, it is material. A factual dispute between the parties that is both genuine and material will defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).

In considering a motion for summary judgment, the court

5

must view all evidence in the light most favorable to the non-movant, accept the non-movant's version of the facts as true, and draw all reasonable inferences and resolve any conflicts in its favor. Sollon, id., *citing* Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). In short, the movant must show that if the pleadings, depositions and other evidentiary material were admissible at trial, the other party could not carry its burden of proof based on that evidence and a reasonable jury would thus decide all genuine material disputes in the movant's favor. Celotex Corp. v. Catrett, 477 U.S. 317, 318 (1986).

Once the movant has demonstrated that there are no genuine issues of material fact, the burden shifts to the non-moving party to "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." Celotex, id. at 322-323; Sollon, id.; Fed.R.Civ.P. 56(c). The sum of the affirmative evidence to be presented by the non-moving party must be such that a reasonable jury could find in its favor, and it cannot simply reiterate unsupported assertions, conclusory allegations, or mere suspicious beliefs to show the existence of a genuine issue. Liberty Lobby, id., at 250-252; Podobnik v.

6

U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

## III. **ANALYSIS**

### A. Additional Facts

Although the parties were invited to provide additional evidence in support of their respective positions, very little was presented. We summarize here the facts from documents which the Court declined to review in considering the motion to dismiss and documents recently submitted by Plaintiffs.

1. *Defendants' documents:* Defendants attached to the brief in support of their motion an e-mail exchange which initiated their concern that none of the Plaintiffs had standing to pursue this matter. During the limited discovery prior to mediation, Defendants sought medical records from Dr. Pritchard, the physician who had prescribed the morphine tablets, and from CVS Pharmacy ("CVS") which had filled the prescription for Mrs. Kerr. On April 5, 2011, when counsel for Defendants contacted Plaintiffs' counsel seeking those records, counsel responded that if he were provided with the necessary medical authorizations, he would see that they were executed. (Doc. No. 19, "Defs.' Brief," Exh. B.) The following day, Plaintiffs' counsel returned the executed authorizations, signed by Ms. Davison, along with a copy of a will addendum prepared by Mr.

Kerr to support her authority to handle "any and all lawsuits related to the death or illness of his wife Jacqueline Kerr." (Defs.' Brief, Exh. C at 2.) On May 12, with mediation scheduled less than two weeks later, CVS had still not provided the records. Despite having received copies of the death certificates of both Mr. and Mrs. Kerr, notification of this lawsuit, and the authorization signed by Ms. Davison, CVS informed counsel it could not process the request because it needed "documentation demonstrating Shelia Dovison [sic] is the Personal Representative/Administrator/Executor of the estate of the deceased." (Defs.' Brief, Exh. D at 2.) Even after CVS was informed that both Mr. and Mrs. Kerr were deceased and Ms. Davison was their daughter, the pharmacy refused to release the records and requested "a copy of the actual certified appointment by the probate court." (Id. at 1.)

Defendants then contacted Plaintiffs' counsel via e-mail, indicating that the pharmacy needed a copy of the probate court appointment for Ms. Davison. (Defs.' Brief, Exh. F.) After some clarification of exactly what was needed, Plaintiffs' counsel responded "There is no estate. . .so there's no court appointment; no letters; etc." (Id.)

2. *Plaintiffs' documents:* In response to the motion to dismiss, Plaintiffs provided copies of two documents intended

8

to show that James Kerr had appointed Ms. Davison as his executor and had intended to give similar powers to the Conleys. (Brief in Response to Defendants' Motion to Dismiss, Doc. No. 20, "Plfs.' Brief," at 2 and Exh. 1 thereto.) On May 15, 2010, Mr. Kerr prepared a document entitled "Addendum to Last Will and Testament" ("the Addendum") in which he appointed Ms. Davison as "Executor of my estate for the sole purpose of handling any and all lawsuits related to the death and/or illness of my wife, Jacqueline Kerr." Ms. Davison was also named as trustee for the administration of a trust to be set up under certain circumstances for one of the five beneficiaries of any proceeds to be realized from the lawsuits. The Addendum further provided that Ms. Davison would not be required to furnish a bond for performance of her duties as executor and gave her authority to engage professional services to assist her in handling the lawsuits in addition to the powers set forth in "Title 20, Chapter 33, of the Pennsylvania Consolidated Statutes."[2] The Addendum was to be construed according to the laws of the Commonwealth of Pennsylvania and was notarized in Schuylkill County, Pennsylvania. The will to which this document was intended to be an addendum was not provided.

---

[2] This section of the Pennsylvania Code pertains to the administration of estates and the duties and powers of administrators.

Approximately three weeks later, on June 8, 2010, Mr. Kerr prepared a "Last Will and Testament" ("the Will.") In that document, Mr. Kerr did not mention Ms. Davison or her role as his executor, but provided for Mr. and Mrs. Conley. First, Mr. Kerr stated, "In the event that I become mental [sic] disabled, I grant Malacia [sic] Ann Conley and Dale Edward Conley full power of attorney." Second, Mr. Kerr gave all of his possessions to the Conleys collectively except for an automobile which was given to Mrs. Conley. The Conleys were also directed to arrange for Mr. Kerr's burial and were to receive "any remaining money." The Will explicitly stated that in making it, Mr. Kerr intended to "hereby revoke any and all others [sic] wills and codicils heretofore made by me." The Will was notarized in Green County, Virginia.

With their response to the Order of Court regarding conversion of the motion to dismiss to a motion for summary judgment, Plaintiffs provided two other documents. (Supplemental Response in Opposition to Defendants' Motion to Dismiss, Doc. No. 24, Exhs. 1 and 2.) On December 1, 2011, Ms. Davison (referred to as Sheila Davison-Fenkner) had received documents entitled "Certificate/Letter of Qualification" from the deputy clerk of the Albemarle County Circuit Court, indicating that she had been qualified as administrator of the

estates of James Kerr and Jacqueline Kerr under Va. Code Ann. §
8.01-50, § 8.01-25, and/or § 64.1-75.1 ("the Qualification
Letters.") The documents also indicated that Ms. Davison had
posted bond in the amount of $1,000 with regard to each estate.

## B. The Parties' Arguments

Defendants raise a single argument in their motion,
namely, that the Conleys and Ms. Davison do not have standing to
pursue this suit on behalf of the estate of Mrs. Kerr.[3] Applying
Virginia law throughout their argument, Defendants contend first
that neither Mr. nor Mrs. Kerr may prosecute any claims arising
from the events alleged because both are deceased. (Defs.'
Brief at 5, *citing* Swan v. Marks, 476 S.E.2d 170, 171 (Va. 1996)
("suits and actions must be prosecuted by and against living
parties.") (Internal quotation omitted.) Second, none of the
Plaintiffs has standing to pursue this lawsuit on behalf of the
Kerrs' estates because wrongful death actions must be brought by
and in the name of the personal representative of the decedent;
at the time the Complaint was filed, none of Plaintiffs had
qualified as such. Moreover, unless a plaintiff identified as
the executor or administrator of a decedent's estate has already

---

[3] Although the Complaint is not a model of clarity and although
Plaintiffs refer repeatedly to pursing damages arising from the death
of James Kerr, the gravamen of the Complaint is clearly the wrongful
acts which allegedly led to the death of Jacqueline Kerr.

11

qualified as the estate's personal representative when the action is filed, the executor or administrator is not "a legal entity;" therefore, the complaint has no legal effect because the named plaintiff lacks legal standing. (Defs.' Brief, id.) Finally, Virginia law does not permit the substitution of a new plaintiff for an original plaintiff who lacked standing and thus, the suit brought by Plaintiffs is a legal nullity which must be dismissed with prejudice. (Id. at 7.)

Plaintiffs respond that Virginia laws regarding proper parties and standing are procedural and not binding on this Court. As a Court sitting in diversity, this Court should apply Pennsylvania procedural laws on those issues. (Plfs.' Brief at 1-2.) Even if the Court were to apply Virginia rather than Pennsylvania law, Plaintiffs have standing because Mr. Kerr's Will gives the Conleys full power of attorney, reflecting his intent to name them as his executors. Moreover, the Addendum names Ms. Davison as his executor for purposes of prosecuting all lawsuits related to the death and/or illness of Mrs. Kerr. Therefore, all three Plaintiffs qualify as the personal representatives of Mr. Kerr's estate with standing to bring this action. (Id. at 2-3, *see also* Exh. 1.)

Third, Plaintiffs contend that Ms. Davison is a proper party to pursue the wrongful death action under Pennsylvania law

because she is a "person entitled by law to recover damages in such an action," inasmuch as she is named in Mr. Kerr's will as the beneficiary of this action and trustee for another beneficiary. (Id. at 3, *citing* Pa.R.Civ.P. 2202(b).) Finally, even if Plaintiffs are not proper parties and do not have standing pursuant to Pennsylvania law, they should not be required to open an estate to proceed with this action inasmuch as the doctrine of "relation back," as discussed in Wilkes-Barre General Hospital v. Lesho, 435 A.2d 1340 (Pa. Commw. 1981), would validate their Complaint. (Id. at 3-4.)

## C. Analysis

Because the parties dispute the question of whether the law of Pennsylvania or Virginia should control in this matter, the Court must perform a choice-of-laws analysis. This task is made more difficult because Plaintiffs fail to articulate in the Complaint exactly the type of action they intend to bring. The claims are styled as strict products liability, breach of express and implied warranties, negligence, negligent misrepresentation, and breach of the Virginia Consumer Protection Act. These are claims Jacqueline Kerr could have brought had she lived and her husband could have brought on

13

behalf of her estate, had he qualified as the administrator[4] thereof. In addition, upon her death on May 27, 2009, a potential claim for wrongful death or a survival action accrued. Those claims do not appear in the Complaint *per se*, but in response to the motion, Plaintiffs agree this is a wrongful death action. That is, they point out that under Pennsylvania law an action for wrongful death may be brought not only by the "personal representative" of the decedent but by "any person entitled by law to recover damages in such an action." (Plfs.' Brief at 3, quoting Pa.R.Civ.P. 2202(b).) The Rule quoted identifies the "parties entitled to bring action for wrongful death." Although a complaint may not be amended through arguments made in a brief opposing a motion for summary judgment (*see* Bell v. City of Philadelphia, No. 06-3960, 2008 U.S. App. LEXIS 8896, *6 (3d Cir. Apr. 23, 2008), *quoting* Shanahan v. City

---

[4] Plaintiffs refer in the Complaint to Mr. Kerr as "testator" of Mrs. Kerr's estate. We assume this is an editing oversight and that "administrator" was intended since "testator" is commonly understood as a person who dies having made a will. *See* Langman v. Keystone Nat'l Bank & Trust Co., 672 F. Supp.2d 691, 695, n.4 (E.D. Pa. 2009), noting that an "executor" is a person named **by a testator** to carry out the provisions **in the testator's will** while an "administrator" is a person appointed by the court to manage the assets and liabilities of an intestate decedent (citing *Black's Law Dictionary* 651, 52 (9th ed. 2009) emphasis added by the Court); *see also* Case v. Miller, CA No. 09-67, 2009 U.S. Dist. LEXIS 101102, *8-*9 (W.D. Va. Oct. 30, 2009) (same.) There is no evidence Jacqueline Kerr had prepared a will (i.e., was a testator) and thus, Mr. Kerr could only have been named as administrator of her estate.

14

of Chi., 82 F.3d 776, 781 (7th Cir. 1996)), the Court will assume that Plaintiffs are proceeding with the intent of bringing a wrongful death action.[5] This conclusion is further bolstered by the fact that the Qualification Letters naming Ms. Davison as administrator of her parents' estates refer to proceeding under Va. Code § 8.01-25, which addresses survival of causes of action

---

[5] Based on the damages sought, this case might better be classified as a survival action. Succinctly stated, in a survival action, 42 Pa. C.S. § 8302, the estate pursues, on behalf of the decedent, claims the decedent could have raised but for his death. Damages in such a case arise from the decedent's pain and suffering prior to death and loss of his earning power from the date of injury until death. A wrongful death claim, 42 Pa. C.S. § 8301, is not the deceased's cause of action, but is brought by specified relatives of the decedent to recover damages on their own behalf, not as beneficiaries of the estate. A wrongful death action addresses the economic effect of the decedent's death upon his family. Frey v. Pennsylvania Elec. Co., 607 A.2d 796, 798 (Pa. Super. Ct. 1992). As in Torres v. Brooks Armoured Car Serv. Div., CA No. 93-5683, 1994 U.S. Dist. LEXIS 5051, *5 (E.D. Pa. Apr. 12, 1994), the pleadings herein are inconsistent in that Plaintiffs assert in their brief that this is a wrongful death action, but the Complaint seeks compensatory, punitive or exemplary damages for the personal injuries, death, severe emotional distress, economic losses and consequential damages incurred by Mr. and Mrs. Kerr as the result of the Defendants' actions, damages which are recoverable only in a survival action. See Gaydos v. Domabyl, 152 A. 549, 552 (Pa. 1930) ("damages in death cases do not include a claim for mental suffering, grief or distress of mind.") Survival and wrongful death actions are distinct under Pennsylvania law and may be brought concurrently.

Virginia law, on the other hand, recognizes a survival action for injuries sustained by the victim, but if the person dies as a result of the wrongful act, the survival action must convert to a wrongful death action. Jones v. Prince George's County, No. 08-1397, 2009 U.S. App. LEXIS 26678, *14-*15 (4th Cir. Dec. 8, 2009), citing Va. Code Ann. § 8.01-25, § 8.01-56, and Wright v. Eli Lilly & Co., 65 Va. Cir. 485, 495 (2004) ("[I]f the [decedent's] death is due to the same injury which is the subject of a pending personal injury action, the pending action is converted to one for wrongful death.") In Virginia, a survival action, like a wrongful death action, must be brought by the personal representative of the estate, as discussed in the text above.

15

(including their conversion to wrongful death actions), § 8.01-
50, explaining how and when actions for death by wrongful act
are to be brought, and § 64.1-75.1, concerning appointment of an
administrator to prosecute an action for personal injury or
wrongful death on behalf of the estate of a deceased Virginia
resident.

    1.  *Plaintiffs' status:*  Before moving to the choice-
of-laws analysis, we find it necessary to clarify Plaintiffs'
status at the time the Complaint was filed.  Plaintiffs argue
that by giving the Conleys power of attorney in the Will dated
June 8, 2010, Mr. Kerr intended to make them his executors, even
though they were not identified by that specific term.  (Plfs.'
Brief at 2.)  The Will states:  "in the event that I become
mental [sic] disabled, I grant Malacia [sic] Ann Conley and Dale
Edward Conley full power of attorney."  There is no evidence Mr.
Kerr ever became mentally disabled and Plaintiffs fail to
explain how the grant of the power of attorney conditioned on
Mr. Kerr becoming mentally disabled equates to his intent to
appoint them as executors of his Will.  Nor do we find any other
language in the Will to support that conclusion.

    In addition, Plaintiffs argue that under Virginia law, an
executor named in a will need take no other steps to act as such
and that therefore the Conleys are qualified by virtue of being

16

named in the Will as having power of attorney. (Plfs.' Brief at 2, citing Va. Code Ann. § 1-234.) Contrary to Plaintiffs' position, Virginia law explicitly provides:

No person appointed by a will executor thereof shall have the powers of executor **until he qualifies as such** by taking an oath and giving bond in the court in which or before the clerk by whom the will or an authenticated copy thereof is admitted to record, except that he may provide for the burial of the testator, pay reasonable funeral expenses and preserve the estate from waste.

Va. Code Ann. § 64.1-136. Powers of executor before qualification. (Emphasis added by the Court.)

There is no evidence either Mr. or Mrs. Conley qualified as executor of Mr. Kerr's will by taking an oath and giving bond or even that his Will was "admitted to record." There is no evidence Jacqueline Kerr left a will, therefore neither of the Conleys could be considered her executor, nor is there any evidence showing either of them took steps to be named administrator of her estate. Finally, there is no evidence either Mr. or Mrs. Conley is a child, spouse or parent of Mr. or Mrs. Kerr, a status which, as discussed below, could potentially give them standing under Pennsylvania law. In sum, because the Conleys could not achieve standing to pursue the claims herein on behalf of themselves or the Kerrs' estates under either

17

Pennsylvania or Virginia law, we need not refer to them in the discussions which follow.

Plaintiffs also argue that Ms. Davison was named executor of Mr. Kerr's estate for the purpose of pursuing any legal actions concerning the death of his wife. However, we note that this appointment appears only in the Addendum dated May 15, 2010. The Will executed on June 8, 2010, explicitly revoked all prior "wills and codicils." Under either Pennsylvania or Virginia law, a will may be revoked in whole or in part by "some other will or codicil in writing." 20 Pa. C.S. § 2505; Va. Code Ann. § 64.1-58.1 ("If a testator executes a will or other writing in the manner in which a will is required to be executed, and such will or other writing expressly revokes a previous will, such previous will, including any codicil thereto, is thereby void and of no effect.") Consequently, we conclude that by the Will of June 8, 2010, Mr. Kerr revoked his appointment of Ms. Davison as his executor. Thus, at the time the Complaint was filed, contrary to the caption, Ms. Davison had not been named executor of Mr. Kerr's estate, much less qualified as such under Va. Code Ann. § 64.1-136. And, as previously discussed, Mrs. Kerr died intestate and therefore Ms. Davison could not have been named her executor.

18

2. *Outline for the choice-of-laws analysis:* The crux of the motion for summary judgment is Defendants' contention that none of the Plaintiffs has standing to proceed with their claims. "While the question of in whose name a suit must be brought is procedural, and thus governed by federal law, that question must be answered with reference to substantive state law." Knit With v. Knitting Fever, Inc., 742 F. Supp.2d 568, 577 (E.D. Pa. 2010), *quoting* Stichting Ter Behartiging. . . v. Schreiber, 407 F.3d 34, 48 (2d Cir. 2005) (internal alterations omitted); *see also* Fed.R.Civ.P. 17(b), stating that in diversity actions, capacity to sue is determined by appropriate state law. The plaintiff bears the burden of establishing standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 296 (3d Cir. 2003). Plaintiffs urge that the law of Pennsylvania should apply in determining the standing question; Defendants argue that Virginia law applies.

As a preliminary step to the analysis, we must identify each "particular issue before the court" because it could well be that different states' laws could apply to separate issues. *See* Taylor v. Mooney Aircraft Corp., No. 06-5054, 2008 U.S. App. LEXIS 4103, *9-*10 (3d Cir. Feb. 25, 2008), noting that Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964), refers

19

to the choice-of-law analysis as focusing on "the policies and interests underlying the particular issue before the court." *See also* Restatement (2d) Conflicts of Law, §§ 145 (limiting tort analysis to the "particular issue") and 188 (same in the context of contract analysis.) As we see it, and as the parties agree, the only question herein is whether Ms. Davison had standing to bring this suit.

Once the issues are identified, this Court applies the choice-of-law rules of Pennsylvania. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court. . .must conform to those prevailing in [the] state's courts."); *see also* Garcia v. Plaza Oldsmobile Ltd., 421 F.3d 216, 219 (3d Cir. 2005). Here, if the laws of Virginia and Pennsylvania are consistent, that is, if no conflict exists, "further analysis is unnecessary and a court can refer to the states' laws interchangeably." Vurimindi v. Fuqua Sch. of Bus., No. 10-4036, 2011 U.S. App. LEXIS 13482, *6 (3d Cir. July 1, 2011), *citing* Hammersmith v. TIG Ins. Co., 480 F.3d 220, 229-230, n.7 (3d Cir. 2007). Alternatively, if the laws are in conflict, meaning that their application would lead to different results, we must continue with "an 'interest analysis' of the policies of all interested states and then – based on the result of that analysis --

characterize the case as a true conflict, false conflict or unprovided-for case." Budget Rent-A-Car Sys. v. Chappell, 407 F.3d 166, 170 (3d Cir. 2005). A true conflict exists "when the governmental interests of both jurisdictions would be impaired if their law were not applied." Lacey v. Cessna Aircraft Co., 932 F.2d 170, 187 n.15 (3d Cir. 1991). In that case, the court must determine which forum has "greater interest in the application of its law." Id.; see also Budget Rent-A-Car, id., stating that "Pennsylvania choice-of-law rules call for the application of the law of the state having the most significant contacts or relationships with the particular issue." (Internal quotation omitted.) "A false conflict exists only if one jurisdiction's governmental interests would be impaired by the application of another jurisdiction's law;" there, the court must apply the law of the interested forum. Id. If the interests of neither jurisdiction would be impaired if its laws were not applied, there is an "unprovided-for" conflict and the court should apply the law of the forum where the tort occurred. Id.

3. *Standing to bring a wrongful death action under Pennsylvania and Virginia law:* In both Pennsylvania and Virginia, the question of who may bring a wrongful death action is determined by statute, arriving at somewhat different

21

results. In Pennsylvania, "the right of action. . .shall exist only for the benefit of the spouse, children or parents of the deceased." 42 Pa. C.S. § 8301(b).[6] The Pennsylvania Rules of Civil Procedure provide:

(a) Except as otherwise provided in clause (b) of this rule, an action for wrongful death shall be brought only by the personal representative of the decedent for the benefit of those persons entitled by law to recover damages for such wrongful death.

(b) If no action for wrongful death has been brought within six months after the death of the decedent, the action may be brought by the personal representative or by any person entitled by law to recover damages in such action as trustee ad litem on behalf of all persons entitled to share in the damages.

Pa.R.Civ.P. 2202(a)-(b).[7]

Under Pennsylvania law, the phrase "personal representative" means the administrator or executor of an estate who has been "duly qualified by law to bring actions within this Commonwealth." Pa.R.Civ.P. 2201. To be appointed to oversee the estate, the putative representative must petition for a grant of

---

[6] A limited exception to this rule applies if there is no spouse, child or parent of the deceased who is eligible to recover damages. In that case, "the personal representative of the deceased may bring an action to recover damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death." 42 Pa. C.S. § 8301(d). Since Plaintiffs here seek damages well in excess of those provided for in § 8301(d), we need not consider this exception further.

[7] Although Rule 2202 is a "procedural" rule, it is substantive in its effect and thus must be applied by Pennsylvania federal courts in considering wrongful death actions. Estate of Cooper v. Leamer, 705 F.Supp. 1081, 1084, n.3 (M.D. Pa. 1989).

22

letters of administration or letters testamentary pursuant to 20 Pa. C.S. § 3151 or §3155. But, as noted in Rule 2202(b), if no action for wrongful death has been filed by the personal representative with six months of the decedent's death, "any person entitled by law to recover damages" – meaning the spouse, child, or parent of the deceased – may bring suit on behalf of the other eligible beneficiaries.[8]

Under Virginia law, a suit for wrongful death "shall be brought by and in the name of the personal representative of such deceased person within the time limits specified," i.e., within two years from the date of death. Fowler v. Winchester Med. Ctr., Inc., 580 S.E.2d 816, 817 (Va. 2003), citing Va. Code § 8.01-50(B). That is, unlike Pennsylvania, such an action may not be brought by a spouse, child or parent unless that person has also qualified as the personal representative of the decedent. Hall v. Bon Secours – St. Mary's Hosp., CA No. 06-678, 2007 U.S. Dist. LEXIS 6114, *4 (E.D. Va. Jan. 29, 2007) (the fact that plaintiff was the son and primary caretaker of the decedent did not qualify him to be the personal representative of his mother's estate.) In addition, the fact

---

[8] Contrary to Plaintiffs' argument that Ms. Davison is a "person entitled by law to recover damages in such an action," because she was named in Mr. Kerr's Addendum as a beneficiary of his estate and trustee for another potential beneficiary (see Plfs.' Brief at 3), neither of those considerations conveys standing under Rule 2202(b).

23

that one is a potential beneficiary under a will does not establish standing as the decedent's personal representative. Brake v. Payne, 597 S.E.2d 59, 63 (Va. 2004.) The qualification must occur pursuant to Virginia law, with special requirements applicable if one is a nonresident of the Commonwealth. Fowler, 580 S.E.2d at 817, *citing* Va. Code Ann. § 26-59.

Having reviewed the law of the two jurisdictions, we conclude there is a true conflict with regard to Ms. Davison's standing to pursue this action. There is no evidence personal representatives of the estates of Mrs. Kerr or of Mr. Kerr brought a wrongful death action within six months of their deaths. Therefore, under Pa.R.Civ.P. 2202(b), Ms. Davison, the Kerrs' daughter, would have standing to pursue a wrongful death action against Defendants on behalf of herself and any other children of the Kerrs.[9] On the other hand, despite the familial relationship, Ms. Davison would not have standing to pursue the claim under Virginia law because she was not qualified as the personal representative of either estate at the time suit was filed.

As we see it, the conflict arises from the fact that

---

[9] There are, of course, a number of other steps (e.g., being named as trustee ad litem) to be accomplished before Ms. Davison could pursue these claims under Pennsylvania law. We need not address them, however, inasmuch as we ultimately conclude that Virginia law should apply.

24

Pennsylvania public policy is to provide a "fall-back" option which allows the closest relatives of the decedent and those with the most likelihood of economic dependence on that person to act as plaintiff and pursue a wrongful death action without the extra legal burden of qualifying as the executor or administrator of the estate. *See* Estate of Cooper v. Leamer, 705 F.Supp. 1081, 1084 (M.D. Pa. 1989), allowing wrongful death suit filed more than six months after Cooper's death to be maintained either by his wife who had been named administratrix or by her, the couple's minor child, or his parents in the capacity of trustee ad litem on behalf of the others; *compare* Torres v. Brooks Armoured Car Serv. Div., CA No. 93-5683, 1994 U.S. Dist. LEXIS 5051, *6 (E.D. Pa. Apr. 12, 1994), dismissing a claim for wrongful death brought more than six months after decedent's death because his mother/plaintiff had not qualified as executrix or administratrix of his estate or as trustee ad litem although the complaint stated she was suing on behalf of all those entitled to recover damages. On the other hand, the Virginia legislature has chosen to limit such actions to the purview of an officially appointed representative, even though (as in Pennsylvania) any recovery would go to certain statutory beneficiaries, not the decedent's estate. *See* Horn v. Abernathy, 343 S.E.2d 318, 323 (Va. 1986), noting that the right

to enforce a wrongful death claim is not personal to the estate's representative; rather he acts as "merely a surrogate for the beneficiaries" named in Va. Code Ann. § 8.01-53; *see also* Case v. Miller, CA No. 09-67, 2009 U.S. Dist. LEXIS 101102, *5-*6 (W.D. Va. Oct. 30, 2009), holding that although there was only one beneficiary eligible to recover under the Virginia wrongful death statute, the action must be prosecuted in the name of the personal representative identified pursuant to Virginia law.

Both these policies cannot be satisfied simultaneously. We must therefore continue with the choice-of-laws analysis and determine which state has the greater interest in application of its law. Since we apply the choice-of-laws jurisprudence of this state, our discussion is governed by Griffith v. United Air Lines, Inc., *supra*, in which the Pennsylvania Supreme Court "expressly abandoned the 'lexi loci delicti' rule 'in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court.'" Hammersmith, 480 F.3d at 227, *quoting* Griffith, 203 A.2d at 805. In short, "Pennsylvania courts are to apply the law of the forum with the 'most interest in the problem,' rather than the law of the place of injury.'" Hammersmith, id., *quoting* Griffith, id. at 806. "The merit of such a rule is that it gives to the place

26

having the most interest in the problem paramount control over the legal issues arising out of a particular factual context and thereby allows the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of the particular litigation." Griffith, id. (internal quotations omitted.)

In requiring an analysis based on determining which state had the "most interest in the problem," the Pennsylvania Supreme Court followed what would later become Section 145 of the Restatement (2d) Conflict of Laws. Davis v. School Dist., 496 A.2d 903, 905 (Pa. Commw. 1985). That section directs that

[the] rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . , with specific reference to the following contacts:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any between the parties is centered.

Laconis v. Burlington County Bridge Com., 583 A.2d 1218, 1223 (Pa. Super. Ct. 1990); see also Davis, id.

However, the "analysis requires more than a mere counting of contacts," as the court "must weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the particular issue." Hammersmith, 480 F.3d at 231 (internal quotations omitted.)

In addition, under Section 146 of the Restatement (2) Conflict of Laws,

> in an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless. . .some other state has a more significant relationship. . .to the occurrence and the parties.

Sosa v. Alvarez-Machin, 542 U.S. 692, 709 (2004).

We conclude that the Commonwealth of Virginia has the greater interest in seeing that its law regarding wrongful death actions is applied. Mrs. Kerr was a resident of Earlyville, Albemarle County, Virginia, at the time Dr. Pritchard prescribed the extended release morphine tablets, the prescription was filled at a CVS located in Virginia, she was treated in a Virginia hospital after ingesting the tablets, and, apparently, she died in Virginia. The fact that the alleged torts, both the wrongful death cause of action and the underlying products liability, negligence and negligent misrepresentation all occurred in Virginia weighs particularly in favor of applying

Virginia law under Restatement (2d) Conflict of Laws § 146. Similarly, Mr. Kerr lived in Virginia, any personal injuries he suffered as a result of his wife's illness and death likely occurred in Virginia, and his last will was made and notarized in Virginia. The only contacts with Pennsylvania in evidence are that Ms. Davison is a resident of Schuylkill County and the subsequently revoked Addendum was to be construed according to the laws of Pennsylvania and was notarized in Pennsylvania. In sum, the contacts between the Commonwealth of Virginia and the events giving rise to the claims are significantly greater than those between Pennsylvania and the events.

4. *The effects of applying Virginia law*: It is abundantly clear from the Virginia law stated above that Ms. Davison, who was neither executor nor administrator of her parents' estates at the time suit was filed, cannot maintain this action. Our discussion would be incomplete, however, if we did not address two additional issues.

First, Plaintiffs argue that even if none of them was properly identified as executor of Mr. Kerr's will at the time the action was filed, there is an exception to the general rule in Pennsylvania that the caption of a suit cannot be amended to replace an improperly identified party with another, distinct legal entity after the statute of limitations has expired. *See*

Tork-Hiis v. Commonwealth, 735 A.2d 1256, 1259 (Pa. 1999), reversing a lower court's decision that the complaint could be amended to add a state agency instead of the Commonwealth itself because the two were distinct legal entities and substitution of the agency was impermissible after the statute of limitations expired. This rule has been explicitly upheld where a plaintiff suing in his own individual capacity later attempts to amend the caption to indicate he is suing as the personal representative of another's estate. *See* Appenzeller v. Phila. Protestant Home, No. 3592, 2007 Phila. Ct. Com. Pl. LEXIS 263, *6-*7 (Pa. C.P. 2007), *aff'd w/out opinion*, 2007 Pa. Super. LEXIS 4419 (Pa. Super. Ct., Dec. 3, 2007), citing cases.

Plaintiffs argue that Wilkes-Barre General Hospital v. Lesho, 435 A.2d 1340 (Pa. Commw. Ct. 1981), held that a court may allow such an amendment even if the executor is appointed after the limitations period has expired, that is, the appointment may be considered as "relating back." (Plfs.' Brief at 3.) The Lesho court defined the doctrine of relation back as follows:

[s]imply stated, the doctrine of relation back as applied to cases where an estate is a party means that the courts under certain circumstances will validate the acts of the personal representative of the estate which preceded the date of his official appointment.

Lesho, 435 A.2d at 1342.

30

The court in Lesho concluded that because the decedent's parents had been granted a petition by Orphans Court to settle the estate and then identified themselves as "administrators" of that estate when they filed an action with a state arbitration panel, they would be allowed to proceed with their suit even though the letters of administration were not granted until after the statute of limitations had run. Lesho, id. at 1343. Other Pennsylvania courts have reached the same conclusion. See, e.g., Gasbarini v. Medical Center of Beaver County, Inc., 409 A.2d 343, 346-347 (Pa. 1979); D'Orazio v. Locust Lake Village, Inc., 406 A.2d 550, 552 (Pa. Super. Ct. 1979); and McGuire v. Erie Lackawanna Railway Co., 385 A.2d 466, 468 (Pa. Super. Ct. 1978).

However, the distinguishing feature of Lesho and other cases allowing the appointment of a personal representative to relate back is that when suit was filed, definitive steps had already been taken to begin the appointment process. See, e.g., D'Orazio, id., in which letters of administration had been requested, the action was filed within the statutory period, and the plaintiff's appointment as administratrix "was substantially assured at the time the complaint was filed;" compare Prevish v. Northwest Medical Center, 692 A.2d 192, 204-205 (Pa. Super. Ct.

31

1997); Cavoulas v. Singh, 81 Pa. D. & C. 4th 250, 261 (2005); and

Orndorff v. Small, 42 Pa. D. & C. 3d 540, 544-545 (1986), where

none of those steps had been taken. As the court in Cavoulas

succinctly pointed out in dismissing a case where the plaintiff

had not applied for letters of administration until after he

brought suit, despite having been appointed executor in his

wife's will, in such circumstances, "there is nothing to relate

back to." Id.

The same is true here. That is, Ms. Davison clearly did

not apply for the Qualification Letters until December 1, 2011,

more than three years after her mother's death. Thus, even if

Pennsylvania law applied, her appointment would not relate back.

Moreover, the Virginia Supreme Court has explicitly rejected the

doctrine of "relation back," even if the person became qualified

as the personal representative of the decedent after bringing

suit. *See* Douglas v. Chesterfield County Police Dep't, 467

S.E.2d 474, 476-477 (Va. 1996).[10]      Thus, no matter whether we

---

[10] In Douglas, the decedent died on October 9, 1991, after being
subjected to a choke-hold by police when he resisted being taken into
protective custody.    His wife filed suit against the police in
Virginia state court on October 8, 1993. She later moved to have her
suit voluntarily dismissed and then filed a federal action on March
16, 1995, alleging multiple deprivations of her husband's rights in
violation of 42 U.S.C. § 1983 and various claims under Virginia law.
Although Mrs. Douglas had been named as executrix in her husband's
will, she did not qualify as personal representative of the estate
until April 26, 1995. The defendants moved to dismiss, arguing that
because she had not qualified as personal representative until more

apply Pennsylvania or Virginia law, Plaintiffs' relation back argument must fail.

Finally, it is clear that Ms. Davison's qualification as administrator of her parents' estates in December 2011 cannot rescue her suit. Under Virginia law, "when a party without standing brings a legal action, the action so instituted is, in effect, a legal nullity." Harmon v. Sadjadi, 639 S.E.2d 294, 299 (Va. 2007). When a suit is deemed a "nullity," its filing does not toll the applicable statute of limitations and it cannot be resurrected by the substitution of parties after the expiration of the two-year period in which wrongful death actions must be brought under Virginia law. Johnston Mem. Hosp. v. Bazemore, 672 S.E.2d 858, 861-862 (Va. 2009); see also Kocher v. Campbell, 712 S.E.2d 477, 480 (Va. 2011) (a suit filed by a

---

than two years after her husband's death, no action had been instituted by a proper party within the statute of limitations period. Among other arguments, Mrs. Douglas asserted that the "deeming" provisions of Va. Code Ann. § 8.01-229(B)(6) permitted her qualification to relate back to the last day of the two-year statute of limitations period and that such relating back made her the proper party to bring both the state and federal actions.

The federal district court certified these questions and arguments to the Virginia Supreme Court which rejected them. The court concluded "there is nothing in the language of § 8.01-229(B)(6) indicating the legislative intent to eliminate the necessity of a personal representative having qualified at the time an action is filed or to relate a later qualification back to the date of the filing [of the law suit.]" Douglas, 467 S.E.2d at 476-477. The court held that because Mrs. Douglas did not qualify as personal representative until after she filed her federal action, when the statute of limitations had already expired, she was not a proper party to bring suit initially and her qualification did not relate back to validate filing of the action. Id. at 477.

33

party who lacks standing "has no tolling effect on the statute of limitations [and] [s]tanding acquired after the statute of limitations has run cannot be retroactively applied to cure the lack of standing that existed when the action was filed.")

The Virginia Supreme Court has also clearly held that "a new plaintiff may not be substituted for an original plaintiff who lacked standing to bring the suit." Chesapeake House on the Bay, Inc. v. Virginia Nat'l Bank, 344 S.E.2d 913, 915 (Va. 1986). As the court pointed out in Fowler v. Winchester Medical Center, when the plaintiff filed her wrongful death suit, "she was not qualified as the decedent's personal representative in Virginia or any other state; consequently, she will never be able to file a new suit as a qualified personal representative and claim that she is 'substantially the same party' as the plaintiff in the first suit." Fowler, 580 S.E.2d at 818. The same is true here.

Because none of the proposed Plaintiffs have standing to pursue the matters raised herein, summary judgment is granted in favor of Defendants and this case is dismissed in its entirety. Appropriate orders follow.

January __3__ , 2012                    _____
                                        William L. Standish
                                        United States District Judge

34